**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

ANAJAI CALCAÑO PALLANO, et al., )
)
      Plaintiffs, )
)
v. )      C.A. No. N09C-11-021 JRJ
)
THE AES CORPORTATION, et al., )
)
      Defendants. )

## ORDER

**AND NOW TO WIT**, this 29th of September, 2015, the Court having duly considered Defendants' Notice of Exceptions to the Special Master's Ruling of May 22, 2015;[1] and Plaintiffs' Response,[2] **IT APPEARS THAT**:

1. Special Master Slights has issued two letter opinions on Defendants' Motion to Compel Production of Documents Pertaining to Dr. Cynthia Bearer.[3] Following the first letter opinion, Defendants filed a Motion for Reconsideration and Clarification. The Special Master granted the Motion for Reconsideration and issued a second letter opinion granting in part and denying in part Defendants'

---

[1] Defendants' Notice of Exceptions to the Special Master's Ruling of May 22, 2015 Pursuant to Super. Ct. Civ. R. 122 ("Defs.' Br.") (Trans. ID. 57401400).
[2] Plaintiffs' Response to Defendants' Notice of Exceptions to the Special Master's Ruling of May 22, 2015 Pursuant to Super. Ct. Civ. R. 122 (Trans. ID. 54735665).
[3] (Trans. ID. 56705451).

Motion to Compel Production.[4]  The Special Master's decision is subject to *de novo* review.[5]

2.  At issue here is the Special Master's determination that Plaintiffs are not required to produce "communications between Plaintiffs' Counsel and Dr. Bearer as fact witness" "[b]ecause Defendants can discover what they seek through expert discovery."  Plaintiffs maintain that they did not know, nor should they have known, of the causation link between their injuries and Defendants' coal ash waste until June 2009, when Dr. Bearer traveled to the Dominican Republic to examine Plaintiffs.  After her examination, Dr. Bearer communicated her findings to Plaintiffs' counsel, who then communicated actual notice of potential claims against Defendants to Plaintiffs.  Because Plaintiffs retained Plaintiffs' counsel at the same time that Plaintiffs' counsel communicated actual notice of claims to Plaintiffs, any knowledge that Plaintiffs' counsel had before that meeting, including anything communicated to them by Dr. Bearer, cannot be imputed to Plaintiffs.[6]

3.  Defendants argue that Dr. Bearer's written communications with counsel are discoverable because Dr. Bearer is both a fact and an expert witness, and, therefore, communications between Dr. Bearer and Counsel are relevant to what

---

[4] Letter Opinion (May 22, 2015) (Trans. ID. 57283025).
[5] Super. Ct. Civ. R. 122.
[6] Letter Opinion at 2–4.

2

the Plaintiffs should have known.[7]   As stated by Defendants, "[t]he critical question is not merely when Dr. Bearer's information became attributable to Plaintiffs, but whether she imparted anything new that Plaintiffs could not previously have discovered."[8]

4.   The Special Master permitted discovery on "any facts and data considered by Dr. Bearer, as testifying expert, in formulating her expert opinion. To the extent such facts and data considered and relied upon by Dr. Bearer include data, assumptions or impressions from Plaintiffs' Counsel, such information would fall within the scope of the discovery."[9]   The Special Master explicitly included "those opinions reviewed or generated by Dr. Bearer in her capacity as a consulting expert."[10]   Furthermore, the Special Master recommended that Defendants be allowed to depose Dr. Bearer "thoroughly" on the basis for her expert opinion on causation.[11]

5.   On the separate subject of potential communications between Dr. Bearer and Pennsylvania counsel, the Special Master denied discovery of any written communications between Dr. Bearer and Pennsylvania counsel because the Plaintiffs' privilege log reflected that no pre-June 2009 written communications

---

[7] Defs.'s Br. 1–2.
[8] *Id.* at 3.
[9] Letter Opinion. at 9–10.
[10] *Id*. at 13.
[11] *Id.* at 14.

occurred between Dr. Bearer and Pennsylvania counsel.[12] However, Defendants were permitted to depose Dr. Bearer, as a fact witness, on any pre-June 2009 oral communications she may have had with Pennsylvania counsel.[13]

6. The Special Master concluded: "Because Defendants can discover what they seek through expert discovery, I decline to order (over Plaintiffs' privilege objections) production of communications between Plaintiffs' Counsel and Dr. Bearer as fact witness."[14]

7. Dr. Bearer is an expert witness on causation for the Plaintiffs. Plaintiffs have been ordered to produce *all* materials generated or reviewed by her in the formation of her expert opinion. Additionally, Defendants are able to depose Dr. Bearer on the basis for her expert opinion on causation.

8. Upon *de novo* review, the Court concludes that Defendants have ample opportunity, through expert discovery, to discover what information was discoverable by Dr. Bearer, that may also have been discoverable by Plaintiffs. [15]

9. **WHEREFORE**, the Special Master's May 22, 2015 recommendation is **APPROVED**, and Defendants' Notice of Exceptions is **DENIED**.

---

[12] *Id.* at 11.

[13] *Id.*

[14] *Id.* at 14.

[15] *See* Super. Ct. Civ. R. 26 ("The frequency or extent of use of the discovery . . . shall be limited by the Court if it determines that: . . . (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought.").

_____
Jan. R. Jurden, President Judge